oral argument not to exceed 15 minutes per side. Ms. Jordan for the petitioner. Good morning. Good morning your honors and may it please the court. Eleanor Jordan on behalf of the petitioners. I'd like to reserve three minutes for rebuttal. Very well. This case is about two sisters Becky and whether they will remain in safety in Michigan or whether they will be returned to face persecution in Guatemala. This petition should be granted for two main reasons. First, remand will allow the agency to apply the proper nexus standard in Sebastian Sebastian, a recent case by this court. Second, the immigration judge in this case displayed alarming bias and remand is necessary to uphold even the appearance of justice. All right, the bias issue, did you appeal, I know it's not you, did counsel below appeal the bias issue to the BIA? Yes, thank you your honor. I imagined that exhaustion may come up and this judge's demeanor and the way that she managed the case, including stopping testimony, was brought up in the sisters opening brief to the board. It was brought up but was it raised as an issue to the BIA? The judge's behavior was raised extensively in the credibility section of the briefing. The issue was credibility though as opposed to bias? The issue was framed as credibility but also the wording that was used was that the sisters should not be expected to exclude such important testimony, that of their parents, from supporting their case simply because the parent acted in a way that the judge disfavored. And also some of the most important damaging language that evinced the judge's bias was very clearly presented. It said that the mother was terrible, the language that the judge used that the mother was terrible, the language that the judge used that she was self-absorbed was squarely presented in early briefing to the BIA. The question was, was it framed in terms of a due process violation as opposed to just a credibility problem? Thank you, your honor. Yes, it was framed in the magical words due process don't necessarily need to be used and this court has said that the wording need not be carbon copied from one brief to another to be able to meet the exhaustion requirement. There's really no question in this case that the BIA was aware of the judge's behavior and really importantly how she stopped... It looks like the parties just looked at it as an adverse credibility determination. It looked like that's the way the BIA ruled on it as well. It's nothing to suggest that they really looked at it as a due process concern even if you know those words weren't used directly in any of the the briefing or the BIA order. The BIA did look... said that they looked at all of the briefing and considered all of the arguments and with well within the record the statements such as the that the sister doesn't get asylum because she's got a terrible mother, the statement that the mother was awful, awful, awful person and the judge describing herself as livid were all squarely in the record before the BIA and the evidence that the that the judge stopped testimony and really prevented the sisters from presenting that case in addition to this court's precedent in a Bay v. Ashcroft clearly saying that children's testimony not only should be given the liberal benefit of the doubt but also that courts are expected to give more weight to objective factors when children are at issue. This frightened teenager was 16 years old and we are going on her testimony to make this case now and that issue was squarely before the BIA. There's no question that the BIA did not have the opportunity to appreciate. They just chose to look the other way in this case. Indeed the way that the judge really prejudged the case showed that this was a mere formality. She stated on the record again before the BIA that this was no different than any gang case she'd seen and it started to insult the mother very early on in testimony. The real problem you've got is that the BIA and the IJ said there's no nexus between the grounds and the family group. Thank you for bringing up nexus your honor. I would like to address nexus and recently this court clarified that stated succinctly an asylum applicant who was persecuted based on mixed motives may be eligible for asylum if at least one central reason for her persecution is the statutorily protected ground and additional motives do not undermine that claim. In other words Congress didn't choose the words the central reason. Congress didn't choose the word the only reason. Your argument is that the sisters were persecuted because they're members of the Rodas Ramirez family. Is that correct? The Rodas Ramirez family. That's the social group and the immigration judge and the BIA on appeal held that they were not or they ruled to the contrary. Our standard review of that ruling is what? What's our standard review? The standard of review for whether the proper motives analysis was applied is de novo but the standard of review for the factual determined if the court were to determine that this was properly analyzed under the mixed motives analysis and the actual plain language of the statute the one central reason then it would be substantial evidence. So that's a high burden to establish that the BIA's ruling was against substantial evidence. The BIA said well it's not the family itself it's that the the family was in the United States and and therefore the sisters likely had money on their own independent because the the family was not there with them. I mean what what is there about the specific Ramirez family as opposed to a family living in the United States? I mean that that's the way I see them ruling is that all right because the family was in the United States as opposed to this particular family is targeted. Tell me why that is against substantial evidence. It's against substantial evidence because animus towards this particular family was argued throughout the record. Indeed there are actually two particular social groups at issue here. I just wanted to make sure. The BIA's reasoning on the family social group is deeply internally inconsistent and it doesn't it isn't supported by reasonable substantial and probative evidence particularly when it's considered on the record as whole. Looking at the the record as you know the the BIA does acknowledge that the attackers said that they had family in the United States and then in nearly the same breath says that it's unclear whether the attackers knew who they were or whether they belonged to the Rodas Ramirez family. And I would differ just slightly though the wording that the that the BIA used for the the reasons that it stopped short and believed that perhaps really surmised that perhaps persecution took place were personal reasons, criminal activity and later mentioned financial gain. But if as the BIA said it wasn't clear whether the attackers knew who the sisters were then how could the reasons be personal? There really was no record supporting just like in Sebastian Sebastian there was no record supporting any personal beef between these particular individuals. And really an important another important thing that the that I'd like to draw out is that the board mentioned that the attackers didn't call the sisters by name when they held them behind with their hands behind their back and threatened a 10 and 13 year old that they were going to cut their tongues out. They didn't. The nexus analysis based on the family connection is it just that the gang or is it the uncle as well? The gang was part of the the uncle was a powerful member of the same gang and so this was instrumentality of his gang and his persecution. And simply because they choose a means of persecution that happens to sometimes advance criminal means doesn't mean that can't be inextricably intertwined and that is the legal error here and why de novo analysis of whether this was really properly done is the is the way to go. And in particular... What are your best cases? You think it's Sebastian Sebastian? Sebastian Sebastian is very helpful because this court clarified that this intermingling and the intertangling of these motives is just what logic dictates. For example in the nexus for withholding standard the board cited opportunistic reasons but if nothing else the only reason that it would be opportunistic to rape these children would be because they were members of the Rodas Ramirez family and because they were without parental protection. Both of those reasons are inextricably intertwined with any possible other motive that the board came up with. And accordingly the distinction that the board was trying to draw as Judge Nelson-Moore said was draws to find a distinction for logic to tolerate. This really in every in every way the way that the judge the way that the board analyzed this wouldn't pass substantial evidence but also did not apply a true mixed motives analysis as the plain language of the statute actually requires it to do. People do bad things for a lot of reasons. Alias are they're good at raping people, kidnapping people, murdering people and sometimes you can make money off that. It reminds me of the fact that when I came to Cincinnati one of the first things I wanted to do was get Grader's ice cream. I love Grader's ice cream but I didn't come to Cincinnati to get ice cream. I came to argue before you good people and people do things for a lot of reasons and this court has restored logic through that analysis because opportunistic reasons the only reasons that it would be opportunistic are the protected grounds. They're inextricably intertwined and that is the plain language of the statute. Isn't there a recent BIA case MRMS that says the opposite that if the financial gain is the primary motive the fact that they were using the family as a means to get to that primary motive doesn't mean a central reason involves the family? Thank you for bringing up MRMS. That is something we'd love the opportunity to brief more because it did come out very recently. However, MRMS is very different from this case because this is a case where we have from the very beginning the sisters have very clearly made it clear that there is family animus. This isn't a case where a family's been paying rent in Central America. Unfortunately a lot of people pay rent to the gangs. When they stop paying it's a it may be a more financially driven decision to persecute them. The reason these girls would be raped, murdered, or kidnapped is because of their membership and because of in the Rodas-Ramirez family and because they don't have parental accompaniment. I see my time has elapsed unless anybody has another question or the questions. Thank you. You'll have your three minutes rebuttal. Thank you. All right let's hear from the respondents. Respondent? Good morning. May it please the court, John Stanton for the respondent. In accordance with Judge Griffin's instructions, I'm prepared to discuss anything related to jurisdiction and preservation, but in accordance with Judge Griffin's instructions, I will go to what I believe is the most important issue, in this case nexus, but if anyone wants to discuss jurisdiction and preservation, I'm more than happy to do so. With respect to asylum and withholding of removal, I mean respondent is sympathetic to people who are trying to escape gang violence and other dangers in their native countries and so but for better or for worse, Congress has set forth standards to acquire, to obtain asylum and withholding of removal in this country and with I mean while we feel bad for petitioners here, that the agency correctly determined that they did not meet the standards, specifically the nexus standards. This court has recognized and set forth in our brief asylum is an extraordinary act and sympathy for a particular applicants is not a basis for bypassing the statutory scheme. As this court expressly stated in Cruz-Guzman v. Barr, which is set in our briefs, the nexus inquiry is a question of motive, not just simple causation and this court, unlike some other courts, has interpreted the motive requirement as requiring animus towards the applicants and antagonism, ill will, I mean things of that nature can't just be causation. So I mean with respect to the gang, I mean regardless of the fact of whether the petitioners were targeted for this reason or that reason initially, they were harassed, mistreated or threatened by the gang. Do you think the BIA's analysis complies with the rationale that we put forth in Sebastian and Sebastian? Yes, your honor. I mean like the board held that there was no evidence in nexus to a protected ground and that the gang's motive for harassing the petitioners was a financial or criminal. So that's in the board's opinion and that is supported by substantial evidence. So I mean if you go to the testimony in Becky's, I mean she was responded to page 162, 163 at the page 454 and page 461 to 62, I mean she made clear that the gang acted hostile towards her only after she rebuffed their efforts. So as I was saying that like regardless of whatever the initial motivation for targeting them was, they threatened her because she rebuffed their efforts and that is just not a protected ground under the statute. Respondents position that this really isn't too different from the Supreme Court's case in INS versus Elias Zacharias, which is certain I briefed that case involved that guerrillas trying to recruit people in the country didn't want to be recruited. When they rebuffed the recruitment efforts, the guerrillas mean assaulted them or mistreated them and the court of appeals held well they were targeted because of their political opinions and the Supreme Court reversed that saying regardless of how they were targeted, they were mistreated because they rebuffed the gang's, I'm sorry, the guerrillas' recruitment effort. I mean again I know this I know this sounds callous but I mean these gang recruitment harassment cases happen all the time. We've seen a lot of them just just really a month or a month and a half after we filed our brief, this court issued an opinion. It wasn't designated for publication. On December 5th, 2023, the decision was written by Judge Murphy, Alonzo Simjab and versus Garland and Judge Murphy says what I just said these these gang harassment cases I mean occur all the time and and they almost always fail for lack of nexus. He cites I mean I don't know 11, 12, 12 decisions from this court both published and unpublished and so I mean. Do you have a citation or a document? It was completely, it was completely, there's no, it was not designated for publication. All I have is a Westlaw citation but the case number was 23-3196, December 5th, 2023. So but I mean. You know what about one of our cases from 2010 has a name that I can't even pronounce. It's B-I then X-I-A then Q-U-V Holder. Have you heard of that case? It's involved, the court held that an applicant was persecuted on account of her membership in a group of women in China who had been subjected to forced marriage where the prosecutor targeted both to secure the repayment of his loan from her father and because she was a woman who could be forced into a marriage and they held weight. It's not just, clearly it was financial. I mean he was mainly mad because his father, her father had not repaid his loan but there was also the family because she was a woman who could be forced in and they held there was a mixed motive. So I mean isn't that sort of our situation here? Most respectfully, where did you say that was from? What court? Our court. That's Sixth Circuit 2010. It was, I call it Q-V Holder. All right, okay, all right. I apologize. Let me ask you this, are you familiar there's a Fourth Circuit decision fairly recently, Perez-Vasquez? The Fourth Circuit, our offices had some disagreements with the Fourth Circuit. The woman was, you know, distorted by the gang because her husband was in the U.S. and sending her money. It's sort of similar, so what you just say, well you just don't like the Fourth Circuit. Please don't hold me to this, but it's there's a pretty good chance that the petitioner's case would have prevailed under Fourth Circuit law, but under Sixth Circuit law, again, this court requires animus, like hatred. You say animus, does it really require that they hate them or just that that's part of the reason? I don't think this court has ever defined animus, but I mean the usual meaning of the world is, I mean, hate, yeah, sure, ill will, I mean antagonism, so I mean just something like, you know, gets my blood boiling, darn those, I mean, people. I don't see it as quite requiring animus. I think it just requires a connection, part of the motive of why this person is being singled out for persecution. Yes. Are you familiar with an older case of ours called Al-Gurbani? From here? From here. Okay. It involved a Yemeni, you know, general whose daughter met with a low-class guy at university, and he was, he didn't want her to marry this low-class guy, and so he was persecuted, but, you know, there was clearly a family connection there, then there was sort of, again, a mixed motive case. I mean, with respect to family, I mean, I don't think there's any evidence at all about the gang, so I mean, are you referring to the uncle, like, in this case? The uncle, and, well, just the fact that at the third time that they confronted Becky and her sister, at that point they said, ah, we know your parents are in the U.S. and they're sending you money, and the question is why does that not provide a I mean, like, I think Judge Griffin's point earlier that, like, that the gang knew that their parents were up in the United States, presumably making money. I mean, their motive is financial rather than, like, any particular hatred for the Rodas Ramirez family. Maybe one thing, though, you know, sometimes gangs just approach random people to rob them or extort them, and clearly there's no nexus if you just happen to be in a wrong spot at the wrong time when the gang passes by. That isn't what happened here. That may not be what happened. They may have targeted her for, initially targeted her for the, for whatever reason, for the particular social group, I mean, which I think is a high watermark for their nexus argument here. There's no evidence about the family, I mean, they just, I mean, but they missed, if she agreed to sell drugs for the gang, they would not have, they would not have harassed them. And so, I mean, she rebuffed their efforts and that's where the real problems began. So, and like I said before, it's sad, but, like, it happens all the time. Am I correct that they have to target her because she's a member of the Ramirez family, as opposed to they targeted her because she has a family in the United States? Is there a distinction? That would be one way of putting it. I would think so. Sure, yeah. And, and the find, the finding below that they were not targeted because they're members of the Ramirez family is a factual matter, is it not? I believe it is. That we review for substantial evidence? Substantial evidence. And does, does the evidence have to compel a conclusion the other way? Absolutely, and it's... For us to find that it is against substantial evidence? It is, that's the standard review, and... Okay, so, all right. It's petitioner's burden to show that the record is... No reasonable judge... The record must compel us to find that they were targeted because they are members of the Ramirez family. Yes, yes, that's right. As opposed to a family that's in the United States. I would agree with that. And going to your question earlier, the court reviews whether a nexus exists under substantial evidence. That's, that point was not in my brief, but I know that it exists. I probably should have been in our brief. It should not be difficult for the court to find nexus within 10 substantial evidence. So, I mean... Now, with respect to the uncle, with respect to the uncle, I mean, this point wasn't made as clear in our brief as it should have been, but the court, for jurisdictional exhaustion purposes, the court cannot consider any evidence from the mother's testimony. So the agency deemed her not credible, it was not exhausted, and so therefore, I mean, the mother's testimony cannot be considered. So, and the only evidence not from... That was not from the mother regarding the uncle's motives for the kidnapping was her father's affidavit. He said that he heard that the uncle was planning to kidnap the other girls and hold them for ransom. We cited some cases in our brief that, like, holding someone for ransom is financial and not connected to a protected ground. I actually overlooked one case, the Kanovalova case. I can't pronounce it. It was on site on page 43 in our brief to this court. It's a public decision from the Sixth Circuit, 2011. It's a Russian name. I mean, that's the hardest part about this job. I just cannot pronounce the names. And so, and it's buried in the case, but apparently there was some criminals seeking to extort money from a family, and among other things, they threatened to kidnap the non-citizen's son, and the court held that, like, that's not a nexus to a protected ground. That's financial, and we really don't think that's much different from what happened here. But even assuming, arguendo, even assuming that the court could consider the mother's testimony, just at most, this uncle is mad at the family because he was cut off financially, which is still a financial motive. And so, Judge Gilman referred to the board's recent decision, MRMS. I think a better decision, which should have been discussed more in our brief, is the board's decision in a matter of L-E-A, 2017. It's cited in the board's decision, and that's really the seminal board decision regarding nexus to a family. The board gives an example of the old Romanov family from the Russian Revolution. They were the family of the Tsar, and when the Bolsheviks overthrew the Tsar, not only was the Tsar killed, but so was all the members of the Romanov family, because, I mean, of who they were, they weren't. And the board also gives some example, and this is, again, this is on the L-E-A decision. The board gives examples of other court decisions, finding that there's got to be just more than, something more, rather than just a family membership. Cruz Guzman actually repeats the point, so says, like, the fact that a persecutor targets a family member simply as a means to an end is not by itself sufficient to claim, especially if the end is not connected to another protected ground. So in the case of the Romanovs, there was some, like, political ground going there. Here, it's just this guy, this uncle, just wants money. I mean, if the grandmother had not cut them off, I mean, presumably. There's also a pedophile, and they're accused of being a pedophile. He's a pedophile, but, I mean, I'm not really sure what that has to do with the family membership, though. I mean, so, I mean, he's, we've said in the brief, he's not a nice guy, and so, but, I mean, but, yeah, I mean, the fact that the petitioner's cousin was assaulted, raped, harmed, it's just really, there's no connection between what happened to the cousin and what happened to, what may happen to the girls, and so, but, so bottom line, again, we're, I'm sorry, I mean, that the petitioners were mistreated, but, again, I hate to sound callous, but there's just not enough here for Nexus for them to qualify first time. Oval tolling removal, I mean, I know oval tolling removal is a lower standard, but it's still got to have some sort of teeth, like the one central reason, as opposed to, like, a reason, so, I mean, it can't just be incidental. It's got to be, I mean, somewhat significant, so, I mean, my time's almost up, but, so I'd be happy to discuss jurisdiction or preservation if any of you have any questions. Thank you, Mr. Stanton, for your argument. Rebuttal, Ms. Jordan. Thank you, Your Honors. I want to make something very clear. Becky, as a terrified 16-year-old, never testified that the gang would not have kept approaching her if she had agreed to join them. That was not in the testimony. It is in some cases, and I know the government has a lot of cases on its side, but that's not in this testimony. Also, the statute specifically compels a change if one central reason for the persecution, not if it was the only reason. Also, if it was a reason, then withholding is proper under this court's precedent. So, there's two other family members who've been attacked. One family member was a cousin, also, who didn't have parental protection, who was kidnapped. Another who was raped by this same uncle, and she also didn't have parental protection. So, the extensive country conditions evidence in this case shored up the fact that these gangs are deeply aware of kinship networks, because they know where to hurt people worst. They know that going after the children, especially as the record was ample in demonstrating these hijos de crianza, these young people who are cared for by their kinship networks, and they're taken care of by aunts and uncles, going after those children is where to get to the families the most. This family did have ongoing animus with Mr. Aleazar, and just because his motives would have been mixed, that is exactly what the statute contemplates. That is exactly what the plain language dictates. As to MRMS, it would be interesting to submit some supplemental briefing, especially in light of the Supreme Court ruling in Loper-Bright, and we would welcome that opportunity. But to the extent that any concerns about nexus do exist in the panel's mind, I would point to the bias issue again, because the girls were prevented from presenting more extensive evidence, as is required by due process, and this court's duty is to continue upholding due process. In the end, every other institution that should have protected these girls has let them down. But this panel has the opportunity, not only to right a decade of injustice that they have experienced, but also to restore the plain language of the nexus standard. I have just one question. Is one of your first protected group about Guatemalan women without parental protection, was that waived as being not exhausted because it wasn't raised before the BIA? No, Your Honor. Thank you for asking about that. I see my time is just about elapsed. May I address your question briefly? Yes, you may. The panel should address that question if it sees fit. I would say, though the government has extensive case law, every particular social group should be considered on a case-by-case basis. That's very clear in the statute, and the fact that a lot of people could fall into a particular social group is inapposite and not to be considered. However, this was exhausted because it was brought in the BIA briefing as a challenge to the judges finding that the group was not cognizable, and indeed, in the record, the petitioner cited the Guatemalan Child Protection Law, which clearly establishes not only social distinction, but particularity, that if the government can decide who falls in this group and who doesn't fall inside that group, then indeed, they are socially distinct and particular. And finally, again, in light of Loper-Bright, it may be interesting to brief that issue even more thoroughly. Very good. Any further questions? Judge Gilman? Judge Mathis? Thank you very much for your argument, Ms. Jordan. A case will be submitted.